**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Ft. Lauderdale Division**

CASE NO. 0:19-CV-62134-RAR/Strauss

HARTE HANKS, INC.,

        Plaintiff,

v.

JUAN CASTANEDA,
LIMA TECH GROUP, LLC, and
PRIMUS INTELLECTUAL
SOLUTIONS, LLC,

        Defendants.

_____ /

**<u>SECOND AMENDED COMPLAINT</u>**

    Plaintiff HARTE HANKS, INC. sues Defendants JUAN CASTANEDA, LIMA TECH

GROUP, LLC, and PRIMUS INTELLECTUAL SOLUTIONS, LLC.

**Introduction**

1.    For years, Juan Castaneda secretly worked for a competing business of Harte

Hanks, Inc. ("Harte Hanks"), his longtime employer.  Harte Hanks hired Castaneda, a computer

programmer and developer, nearly three decades ago to develop and update the sophisticated

package-tracking applications that are at the core of Harte Hanks's logistics operations.

Castaneda developed close relationships with many of Harte Hanks's most valuable business

clients who use and depend on Harte Hanks's proprietary applications.

2.    In 2011, while working for Harte Hanks, Castaneda secretly formed a competing

business, Lima Tech Group, LLC ("Lima").  Using highly confidential and closely guarded

HomeR Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

information that is the exclusive property of Harte Hanks, Castaneda, individually and through Lima, created or helped create package-tracking programs for Lima and for an upstart logistics company, Primus Intellectual Solutions, LLC ("Primus"), of which he was a founding member. The programs are similar if not identical to Harte Hanks's programs.  When Harte Hanks discovered the violations, it initiated an investigation.  Castaneda admitted during the investigation that he had not notified anyone at Harte Hanks of these competing businesses.  He also initially lied about his ownership interest in Primus.  He lied about other important details surrounding these companies, as well, in an effort to conceal the nature and scope of his misdeeds. In fact, Castaneda had, with the knowing assistance of Primus and Primus's other members, taken steps to conceal and misrepresent his individual ownership in Primus.

3.     Accordingly, Castaneda, acting in his individual capacity and through his wholly-owned entity Lima, knowingly and with the intent to defraud misappropriated highly valuable, confidential information from Harte Hanks for the benefit of competing businesses he secretly helped create and in which he had an ownership interest.  Upon information and belief, Castaneda has continued to work for Harte Hanks competitors and to share highly confidential information belonging to Harte Hanks in breach of his agreements.  Castaneda's secret and disloyal actions violated confidentiality, non-disclosure, and non-compete agreements he entered into with Harte Hanks and caused Harte Hanks injury.

4.     Harte Hanks therefore brings this diversity action under Florida law for injunctive relief and to enforce restrictive covenants against Castaneda and Lima and for damages against Castaneda, Lima, and Primus.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

**Jurisdiction and Venue**

5.     This Court has diversity jurisdiction under 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

6.     Plaintiff Harte Hanks, Inc. is a Delaware corporation with its principal place of business in Texas.

7.     Defendant Juan Castaneda is a citizen of Florida.

8.     Defendant Lima Tech Group, LLC is a Florida limited liability company with its principal place of business in Florida.  Juan Castaneda, a Florida citizen, is its sole member.

9.     Defendant Primus Intellectual Solutions, LLC is a Florida limited liability company with its principal place of business in Florida.  Primus's members are citizens of Florida, Oregon, and Argentina.

10.     Venue in the Southern District of Florida is proper pursuant to 28 U.S.C. § 1391(b)(2).

**General Allegations**

11.     Harte Hanks is a publicly traded company founded in 1923 with diverse operations throughout the United States and globally.  Harte Hanks offers a broad range of services for consumer and business-to-business markets including marketing, customer relationship solutions, and logistics.  Services include website development and design, search engine management, digital analytics, digital strategy, e-commerce, and interactive relationship management services.

12.     Harte Hanks conducts its various lines of business through wholly-owned subsidiaries based throughout the United States and worldwide.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

13.     Harte Hanks faces significant competition in all areas of its operations, and logistics is no exception.

14.     At the heart of Harte Hanks's logistics division is its information technology. Harte Hanks developed advanced proprietary software primarily in-house.  Harte Hanks's ability to compete depends on the protection of its technology, products, services, applications, and brands through intellectual property rights protections, including copyrights, database rights, trade secrets, trademarks, domain name registrations, and enforcement procedures.

15.     One way that Harte Hanks protects its business is through the confidentiality, non-disclosure, and non-compete agreements Harte Hanks requires of its employees.

16.     Harte Hanks hired Juan Castaneda in about 1993 for its office in Broward County, Florida to program and develop logistics software.

17.     From the time of his hiring through his termination on August 19, 2019, Castaneda was continuously employed by Harte Hanks.

18.     Castaneda took a leading role in developing and improving sophisticated programs, including Alllink360 Logistics, a software application to improve workflow in shipping; TOPS, an application to make customers' mailings more efficient and to maximize postage savings; and HITS, an application to automate customers' transportation businesses.

19.     Castaneda also formed relationships with a number of highly valuable business customers that use Harte Hanks's logistics services and software.

**Non-Disclosure Agreement**

20.     From the beginning of his employment, Castaneda agreed that all the software and all other property he developed or worked on is the property of Harte Hanks and that he

4

would not disclose, share, or otherwise use any of the property or information he developed or worked on outside of Harte Hanks.

21.     In 2004, Castaneda signed as a condition of his continued employment a Confidentiality/Non-Disclosure Agreement, *see* ECF No. 10-1.

22.     In the agreement, Castaneda acknowledged, "my employment at Harte-Hanks provides me with access to Non-Public Information."  *Id*. ¶ 1.

23.     Non-Public Information is broadly defined as "information not available to the public and concerns Harte-Hanks or its customer" and includes "trade secrets" and "proprietary information," among many other categories.  *Id*.

24.     Castaneda agreed, "I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation Non-Public Information obtained during my employment other than in the ordinary course of performing my duties under this Agreement."  *Id*. ¶ 2.

25.     He further agreed "to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs, or systems that I develop or discover during the period of time I am employed by Harte-Hanks and that are related to any work or project that I work on or have knowledge of while employed at Harte-Hanks or that I develop or discover either using Harte-Hanks equipment or resources or while on Harte-Hanks time whether developed or discovered by me alone or with other persons."  *Id*. ¶ 5.

26.     Such intellectual property, the agreement states, "whether or not confidential," is "the sole and absolute property of Harte-Hanks or the customer."  Castaneda expressly waived any claim or title to the property.  *Id*.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

27.    The Confidentiality/Non-Disclosure Agreement further incorporates the "terms and conditions of [Castaneda's] employment" set forth in Harte Hanks's employee handbook. *Id*. ¶ 11.

28.    Harte Hanks's handbook contains additional conditions on Castaneda's confidentiality obligations.  Applicable and relevant language from the handbook informs employees that they "may have access to proprietary or confidential information, trade secrets and sensitive information."  The handbook further explains, in relevant part, "[a]s information is one of the company's and our client's greatest asset, every employee has a continuing duty to protect these assets and maintain confidentiality in accordance with all policies."  Employees therefore "must acknowledge and adhere to these responsibilities" through "written promises" contained in the Confidentiality/Non-Disclosure Agreement."

29.    During the relevant time-period in this case, Castaneda acknowledged receipt of and access to Harte Hanks's handbook and agreed to abide by and observe the handbook's rules and policies.

## Non-Compete Agreement

30.    In 2006, Castaneda executed a Non-Compete Agreement, ECF No. 10-2, to supplement and incorporate the Confidentiality/Non-Disclosure Agreement.

31.    Castaneda agreed that "[f]or so long as [he] is employed by [Harte Hanks] and for a period of one (1) year after the termination of [his] employment for any reason whatsoever, whether voluntarily or involuntarily, [he] shall not directly or indirectly, individually or for any person, firm or employee solicit, divert, interfere with, disturb or take away, or attempt to solicit, divert, interfere with, disturb or take away the patronage of" Harte Hanks's clients or any entity

6

that was a client "within one (1) year prior to termination of Employee's employment." *Id.* at ¶ 2a.

32.     Castaneda stipulated that any good will developed by him with any client is "substantial good will on behalf of" Harte Hanks and that all "[s]uch customer good will is, in all instances, the property of [Harte Hanks]." *Id.*

33.     Castaneda agreed that "any solicitation of customers in violation of this agreement would be a misappropriation of customer good will to the substantial detriment of [Harte Hanks]." *Id.*

34.     In restricting competition, the agreement broadly provided,

> For so long as Employee is employed by Employer and for a period of one (1) year following the termination of Employee's employment with Employer, Employee shall not engage in or provide any services as an individual or for a business, practice, service or enterprise that provides services which are reasonably-deemed competitive with or related to the services provided by HDM if such services to be provided by Employee are reasonably-deemed competitive with or related to the services provided to HDM within one (1) year prior to termination of Employee's employment. This restriction shall apply throughout the United States and Canada.

*Id.* ¶ 2b.

35.     The agreement further provides that Castaneda "understands, acknowledges and agrees that in the event of a breach or threatened breach of any of the covenants or provisions contained in this Agreement, Employer shall suffer irreparable injury for which there is no adequate remedy at law.  Employer will therefore be entitled to injunctive relief from the courts without bond, enjoining the Employee from engaging in activities in breach of this Agreement." *Id.* ¶ 6a.

36.     Harte Hanks's handbook also addresses outside employment.  The relevant section of the Handbook provides that second jobs are permitted, provided the employee

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

observes specified guidelines that include written notice to the employee's supervisor "when you accept a job outside of Harte Hanks."  The relevant guidelines prohibit "work for Harte Hanks' vendors or suppliers due to conflicts of interest" and "work for Harte Hanks competitors."  *Id.* ¶ 1.12.

### Castaneda Secretly Forms Competing Logistics Companies

37.    On or about October 27, 2011, Castaneda formed the Florida limited liability company, Lima Tech Group, LLC.

38.    Lima listed the purpose for its organization to be "ANY AND ALL LAWFUL BUSINESS IN TECHNOLOGY CONSULTANTS."

39.    Castaneda has been the sole member and manager of Lima from its inception to the present.

40.    Castaneda conducts, manages, and controls the business affairs of Lima to such an extent that Lima has no independent existence. Lima is thus a mere instrumentality of Castaneda.

41.    Castaneda formed Lima both to compete with Harte Hanks and to conceal his personal ownership in another Harte Hanks competitor, Primus Technology Solutions, LLC, and to enable Castaneda to develop or misappropriate, or both, logistics software that is the sole property of Harte Hanks. The misappropriated software was then used by Harte Hanks competitors, Lima and Primus.

42.    Accordingly, Lima is and has at all material time been Castaneda's alter ego.

43.    Castaneda's scheme to misappropriate Harte Hanks property for use by Lima and Primus went on for years.

44.    Lima generated at least over $1.2 million in revenue from 2011 through 2018 from its logistics technology and services.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

45.     Lima also employed and paid other Harte Hanks employees.

46.     Castaneda further used Harte Hanks vendors to perform services for Lima or Primus, or both, and arranged to have the work invoiced to Harte Hanks for payment.

47.     At no time before his termination from Harte Hanks did Castaneda disclose his ownership and management of Lima, the company's stated purpose as a technology consultant, or the company's revenue to Harte Hanks.

48.     Approximately two weeks before the formation of Lima, on or about October 10, 2011, Castaneda formed Primus Intellectual Solutions, LLC as one of four founding members.

49.     During the relevant time period, Castaneda was at all times a member of Primus, owning 25%.

50.     Primus offers logistics software applications that are substantially similar or identical to Harte Hanks's proprietary logistics software.

51.     Primus's software offers customers a "very high level of automation" in shipping small, medium, or large packages through carriers offering the best rates.

52.     Based upon publicly available information, Primus's logistics services and applications compete directly with Harte Hanks.

53.     At no time before his termination from Harte Hanks did Castaneda disclose his ownership of Primus, the company's stated purpose as a technology consultant, or the company's revenue to Harte Hanks.

54.     Castaneda and Primus undertook actively to conceal Castaneda's membership in Primus.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

55.     For example, though Castaneda individually owned a membership interest in Primus, Primus's managers and Castaneda misidentified the member as Lima in corporate filings with the State of Florida.

56.     In 2013, Castaneda referred Primus to Harte Hanks as an outside sales source. From 2013 to 2015, Harte Hanks paid Primus for referred business.

57.     At no time before his termination from Harte Hanks did Castaneda or Primus disclose Castaneda's ownership interest in Primus.

58.     Upon information and belief, Primus at all times knew that Castaneda was an employee of Harte Hanks; that he programmed and developed logistics software for Harte Hanks; and that he had executed one or more Employment Agreements containing restrictive covenants with Harte Hanks.

59.     From about the formation of Primus and Lima until the present, Castaneda, individually and through Lima, has knowingly and with intent to defraud Harte Hanks provided Primus material assistance and services in developing its logistics services and software applications using proprietary information, technology, and training acquired during his employment with Harte Hanks.

60.     Upon information and belief, Primus, with the material assistance and services of Castaneda and Lima, generated several millions of dollars annually from its logistics services, causing Harte Hanks financial injury.

61.     Castaneda's actions, individually and through Lima, violated the express terms of Castaneda's Confidentiality/Non-Disclosure and Non-Compete Agreements, and incorporated rules and policies from Harte Hanks's handbook (collectively, the "Employment Agreements"), and constitute a continuing breach.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

62.     As a direct and proximate result of Castaneda's, Lima's, and Primus's wrongful acts as asserted above (*see* ¶¶ 1-3 and 37-61), Harte Hanks has suffered and will continue to suffer irreparable harm to its business.

63.     Harte Hanks has no adequate remedy at law for such injuries, as damages are not fully ascertainable at the present, nor can they be readily calculated with reasonable certainty in the future.

64.     The injury to Harte Hanks if Castaneda and Lima are not enjoined as requested herein far outweighs any harm that the issuance of an injunction may inflict upon Castaneda or Lima. An injunction would not disable Castaneda from being employed; it would only prohibit Castaneda from being employed in violation of Employment Agreements he voluntarily entered into as a specific condition of his employment that are specifically enforceable under Florida and Delaware law.  And, an injunction would not disable Lima's business operations; it would only prohibit Lima from using and misappropriating proprietary Non-Public Information that is the exclusive property of Harte Hanks.  Conversely, without an injunction, Castaneda and Lima could continue to do substantial damage to Harte Hanks, including but not limited to the loss of confidential information that gives Harte Hanks a competitive advantage in the industry, loss of customers and good will, and the loss of the benefit of its bargain under the Employment Agreements, in addition to financial injuries already caused by Castaneda's breaches.

65.     All conditions precedent to the bringing of this action have been performed or otherwise satisfied or waived.

66.     As a result of the unlawful acts of Castaneda, Lima, and Primus, Harte Hanks has retained the undersigned counsel and is obligated to pay a reasonable fee for legal services.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

## COUNT I—INJUNCTIVE RELIEF
### (against Castaneda and Lima)

67.     Harte Hanks realleges and incorporates paragraphs 1 through 66 above as if fully set forth herein.

68.     The Employment Agreements are valid and enforceable contracts that are essential to protecting Harte Hanks's legitimate business interests.

69.     Harte Hanks's legitimate business interests include protecting trade secrets and other valuable confidential business information, such as proprietary and confidential logistics technology and software that Harte Hanks developed at substantial costs; protecting relationships with specific existing business customers that generate a substantial portion of Harte Hanks's logistics revenue; and protecting customer good will established through extraordinary and specialized training Castaneda received as a longtime Harte Hanks employee.

70.     Castaneda agreed to perform under and abide by the Employment Agreements as a condition of his continued employment.

71.     In the Employment Agreements, Castaneda agreed that Harte Hanks is entitled to injunctive relief if he, among other things, divulges any non-public information, fails to disclose to Harte Hanks any improvements or software he developed, or engages in or provides any services to any business that competes with Harte Hanks.

72.     Castaneda therefore, under the terms of the Employment Agreements, stipulated to entry of an injunction against him for breach of the restrictive covenants.

73.     During his employment with Harte Hanks and within one year of his termination, Castaneda, individually and through his alter ego Lima, breached the Employment Agreements by, inter alia: divulging or otherwise misappropriating proprietary, confidential, or trade secret

HomeR Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

protected software, technology, and other valuable inside information belonging to Harte Hanks for use by competing businesses; working for or otherwise assisting businesses in offering software applications and logistics services that compete directly with Harte Hanks; and failing to disclose to Harte Hanks software, technology, logistics services, and customer relationships that he developed or helped develop for Lima and Primus.

74.     The restrictive covenants in the Employment Agreements are reasonable in duration and geographic area, as Harte Hanks's logistics operations are technology-based, worldwide, and involve large business customers with global operations.

75.     In light of Castaneda's stipulation to the entry of an injunction against him for breach of the restrictive covenants, Harte Hanks has shown likelihood of ultimate success on the merits.

76.     Harte Hanks will suffer irreparable injury or harm if an injunction is not granted against Castaneda and his alter ego Lima.

77.     The threatened injury to Harte Hanks if an injunction is not issued outweighs any damage such injunction may cause to Castaneda or to Lima.

78.     Harte Hanks has no adequate remedy at law to protect its Non-Public Information and valuable client relationships.

79.     The public has a cognizable interest in the protection and enforcement of contractual rights.  That interest is particularly strong with respect to noncompete agreements, as the Florida Legislature has determined that the enforcement of such agreements is in the public's best interest.

WHEREFORE, Harte Hanks demands judgment against Castaneda and Lima imposing an injunction as follows:

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

a.    permanently enjoining Castaneda and Lima and all persons and entities acting in concert with Castaneda and Lima from using any technology, software, source code, applications, trade secrets, and Non-Public Information Castaneda developed, helped developed, or was given access to during his employment at Harte Hanks;

b.    enjoining Castaneda and Lima and all persons and entities acting in concert with Castaneda and Lima from working for, consulting, or assisting in any way Lima, Primus, and any other competing business of Harte Hanks throughout the United States and Canada for a period of twelve (12) months from the date of Castaneda's termination;

c.    enjoining Castaneda and Lima and all persons and entities acting in concert with Castaneda and Lima from soliciting, accepting business from, diverting, attempting to divert, taking away, or attempting to take away, any of Harte Hanks's specific prospective and existing business relationships or Harte Hanks employees, or both, for a period of twelve (12) months from the date of Castaneda's termination; and

d.    awarding Harte Hanks such other and further relief as this Court deems just and proper.

**COUNT II—BREACH OF CONTRACT**
**(against Castaneda)**

80.     Harte Hanks realleges and incorporates paragraphs 1 through 66 above as if fully set forth herein.

81.     The Employment Agreements are valid and enforceable contracts that protect legitimate business interests including, but not limited to, protecting trade secrets and other valuable confidential business information, such as proprietary and confidential logistics

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

technology and software Harte Hanks developed at substantial costs; protecting relationships with specific existing business customers that generate a substantial portion of Harte Hanks's logistics revenue; and protecting customer good will established through extraordinary and specialized training Castaneda received as a longtime Harte Hanks employee.

82.     Castaneda materially breached the Employment Agreements by, *inter alia*: divulging or otherwise misappropriating proprietary, confidential, or trade secret protected software, technology, and other valuable inside information belonging to Harte Hanks for use by competing businesses; working for or otherwise assisting businesses in offering software applications and logistics services that compete directly with Harte Hanks; failing to disclose to Harte Hanks software, technology, logistics services, and customer relationships that he developed or helped develop for Lima and Primus.

83.     Castaneda's material breaches have been continuous.

84.     As a direct and proximate result of Castaneda's breaches, individually and through Lima, Harte Hanks has suffered injury.

WHEREFORE, Harte Hanks demands judgment against Castaneda for injunctive relief, damages, interest, costs, and awarding Harte Hanks such other and further relief as this Court deems just and proper.

### COUNT III—BREACH OF DUTY OF LOYALTY
### (against Castaneda and Lima)

85.     Harte Hanks realleges and incorporates paragraphs 1 through 66 above as if fully set forth herein.

86.     As an employee, Castaneda—and his alter ego Lima—owed Harte Hanks a duty of loyalty.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

87.     Castaneda, individually and through Lima, breached his duty of loyalty by working outside of Harte Hanks for a competitor; failing to inform Harte Hanks of his affiliation with and interest in Primus and Lima; developing and assisting in the development of software to compete with Harte Hanks; and misappropriating proprietary and confidential Harte Hanks information.

88.     As a direct and proximate result of Castaneda's breach, individually and through Lima, of his duty of loyalty, Harte Hanks has suffered injury.

WHEREFORE, Harte Hanks demands judgment against Castaneda and Lima for damages, interest, costs, and awarding Harte Hanks such other and further relief as this Court deems just and proper.

### COUNT IV—BREACH OF FIDUCIARY DUTY
### (against Castaneda and Lima)

89.     Harte Hanks realleges and incorporates paragraphs 1 through 66 above as if fully set forth herein.

90.     Castaneda—and his alter ego Lima—owed both express and implied fiduciary duties to Harte Hanks.

91.     Castaneda's express duties arose from the Employment Agreements, which prohibit him or Lima from disclosing or using proprietary and confidential information belonging to Harte Hanks.

92.     Castaneda's implied duties arose from his status as a computer programmer and analyst at Harte Hanks, who had access to and was entrusted with proprietary and confidential information.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

93.     Harte Hanks reposed trust and confidence in Castaneda, to, among other things, (i) ensure that all software and other property he developed or worked on would be the sole property of Harte Hanks; (ii) not disclose, share, or otherwise use any of the property or information he developed or worked on outside of Harte Hanks; (iii) not at any time, during or subsequent to his employment, directly or indirectly divulge to any person, form, or corporation outside of Harte Hanks any Non-Public Information obtained during the course of performing his duties, *see* ECF No. 10-1 ¶ 1; (iv) not directly or indirectly, individually or for any person or firm, solicit, divert, interfere with, disturb or take away, or attempt to do so, the patronage of Harte Hanks's clients for a period of one year after his termination, *see* ECF No. 10-2 ¶ 2a; and (v) ensure that any good will developed by him with any client of Harte Hanks is substantial good will on behalf of Harte Hanks, *see id.*

94.     Castaneda accepted the trust and confidence reposed in him by Harte Hanks and assumed the aforementioned fiduciary duties.

95.     Castaneda's breach of his fiduciary duties, individually and through Lima, was willful and malicious.

96.     As a direct and proximate result of Castaneda's breach, individually and through Lima, of his duty of loyalty, Harte Hanks has suffered injury.

WHEREFORE, Harte Hanks demands judgment against Castaneda and Lima for damages, punitive damages, interest, court costs, and awarding Harte Hanks such other and further relief as this Court deems just and proper.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

## COUNT V—VIOLATION OF THE COMPUTER FRAUD ACT
### (against Castaneda and Lima)

97.     Harte Hanks realleges and incorporates paragraphs 1 through 66 above as if fully set forth herein.

98.     While employed with Harte Hanks, Castaneda was given access to Harte Hanks's computer systems containing highly-sensitive and proprietary information and trade secrets for the purpose of developing or helping to develop software programs, applications, and source codes for Harte Hanks.  He was authorized to access these computer systems only for the purpose of performing legitimate business functions for Harte Hanks and for the benefit of Harte Hanks.

99.     Based on information and belief, during his employment, Castaneda, individually and through his alter ego Lima, intentionally and continuously accessed Harte Hanks's computer systems to covertly obtain confidential and proprietary Non-Public Information for the benefit of Lima and Primus, companies that directly compete with Harte Hanks, in violation of 18 U.S.C. § 1030(a)(2)(C).

100.     Based on information and belief, during his employment, Castaneda, individually and through his alter ego Lima, also knowingly and with intent to defraud Harte Hanks accessed Harte Hanks's computer systems to covertly obtain confidential and proprietary Non-Public Information for the benefit of Lima and Primus, companies that directly compete with Harte Hanks, in violation of 18 U.S.C. § 1030(a)(4).

101.     Such access exceeded the scope of Castaneda's and Lima's authorized access to Harte Hanks's computer systems.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

102.     Harte Hanks's computer systems are "protected computers" because they are used in interstate and international commerce.  Specifically, Harte Hanks uses its computer systems to conduct and manage its logistics and information technology business among its facilities around the United States and worldwide.

103.     As a result of Castaneda's conduct, he, Lima, and Primus have obtained proprietary and confidential information that is the exclusive property of Harte Hanks, including, but not limited to, software programs and applications such as Alllink360 Logistics, TOPS, and HITS, Harte Hanks's logistics operations, customer lists and information, employee lists, compensation information, business plans, strategies, and other protected information.

104.     Harte Hanks has suffered a loss in excess of $5,000.00 within a one-year period.

WHEREFORE, Harte Hanks demands judgment against Castaneda and Lima for damages, interest, court costs, and awarding Harte Hanks such other and further relief as this Court deems just and proper.

## COUNT VI—TORTIOUS INTERFERENCE WITH A CONTRACT
### (against Primus)

105.     Harte Hanks realleges and incorporates paragraphs 1 through 66 above as if fully set forth herein.

106.     Harte Hanks at all material times had enforceable Employment Agreements containing restrictive covenants with Castaneda.

107.     Primus was at all time aware that Castaneda was an employee of Harte Hanks and and that Castaneda had executed the Employment Agreements.

108.     Primus knowingly and intentionally interfered with Harte Hanks's Employment Agreements with Castaneda by, *inter alia*:

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

a. using and accepting Castaneda's services as a software developer;

b. allowing Castaneda to be a founding member of Primus and to retain his ownership interest;

c. using and accepting misappropriated Harte Hanks's property, including proprietary, confidential software, technology, and other Non-Public Information, unlawfully obtained through Castaneda or Lima, or both; and

d. competing with Harte Hanks by using such software, which performs identical or substantially identical functions as Harte Hanks logistics software and technology.

109.   Primus's interference induced or otherwise caused Castaneda to violate his agreements with Harte Hanks.

110.   Primus's interference was intentional and unjustified.

111.   As a direct and proximate result of Primus's interference, Harte Hanks has suffered injury.

WHEREFORE, Harte Hanks demands judgment against Primus for damages, interest, court costs, and awarding Harte Hanks such other and further relief as this Court deems just and proper.

### COUNT VII—TORTIOUS INTERFERENCE WITH A CONTRACT
### (against Lima)

112.   Harte Hanks realleges and incorporates paragraphs 1 through 66 above as if fully set forth herein.

113.   Harte Hanks at all material times had enforceable Employment Agreements containing restrictive covenants with Castaneda.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

114.    Lima was at all time aware that Castaneda was an employee of Harte Hanks and that Castaneda had executed the Employment Agreements.

115.    Lima knowingly and intentionally interfered with Harte Hanks's Employment Agreements with Castaneda by, *inter alia*:

    a.   using and accepting Castaneda's services as a software developer;

    b.   using and accepting misappropriated Harte Hanks's property, including proprietary, confidential software, technology, and other Non-Public Information, unlawfully obtained through Castaneda; and

    c.   competing with Harte Hanks by using such software, which performs identical or substantially identical functions as Harte Hanks logistics software and technology.

116.    Lima's interference induced or otherwise caused Castaneda to violate his agreements with Harte Hanks.

117.    Lima's interference was intentional and unjustified.

118.    As a direct and proximate result of Lima's interference, Harte Hanks has suffered injury.

WHEREFORE, Harte Hanks demands judgment against Lima for damages, interest, court costs, and awarding Harte Hanks such other and further relief as this Court deems just and proper.

## COUNT VIII—CONSPIRACY TO COMMIT TORTIOUS INTERFERENCE
### (against Castaneda and Primus)

119.    Harte Hanks realleges and incorporates paragraphs 1 through 66, and 105-111 above as if fully set forth herein.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

120.    Primus conspired with Castaneda to tortiously interfere with Harte Hanks' Employment Agreements.

121.    Primus and Castaneda made an agreement for Castaneda to develop logistics software, or misappropriate Harte Hanks' logistics software, or both, as part of Castaneda's membership duties and duties as a consultant or employee of Primus. Primus and Castaneda further agreed to conceal Castaneda's ownership and affiliation in the company.

122.    Castaneda in furtherance of that agreement provided such software or consulting services, or both, to Primus and concealed his ownership and work for Primus from Harte Hanks, all in violation of Castaneda's Employment Agreements. Castaneda further referred Primus to Harte Hanks for services.

123.    Primus in furtherance of the agreement concealed Castaneda's ownership and affiliation by, *inter alia*, misidentifying the members of Primus in its corporate filings; used, marketed, and profited from logistics software owned by Harte Hanks; paid Castaneda distributions or other payments for actions that breach his Employment Agreements.

124.    These overt acts intentionally and unjustifiably interfered in Castaneda's Employment Agreements.

125.    As a direct and proximate result of the acts performed pursuant to the conspiracy, Harte Hanks has suffered injury.

WHEREFORE, Harte Hanks demands judgment against Castaneda and Primus for damages, interest, court costs, and awarding Harte Hanks such other and further relief as this Court deems just and proper.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

## COUNT IX—UNJUST ENRICHMENT
### (against Lima)

126.    Harte Hanks realleges and incorporates paragraphs 1 through 66 above as if fully set forth herein.

127.    Harte Hanks conferred a benefit upon Lima by giving Castaneda, of whom Lima is an alter ego, employment, and specialized training and valuable access to and knowledge of Harte Hanks's confidential business information, such as proprietary and confidential logistics technology and software that Harte Hanks developed at substantial costs, or that Harte Hanks owns as a result of Castaneda's employment.  Harte Hanks also gave Castaneda access to and knowledge of Harte Hanks's business customers that generate a substantial portion of Harte Hanks's logistics revenue.

128.    Lima was aware of the benefits conferred upon it by Harte Hanks.

129.    Lima voluntarily accepted and retained the benefits conferred upon it by Harte Hanks, substantially profiting from Harte Hanks' property.

130.    The circumstances are such that it would be inequitable for Lima to retain the benefit conferred upon it by Harte Hanks without paying the value thereof to Harte Hanks.

WHEREFORE, Harte Hanks demands judgment against Lima for damages, interest, court costs, and awarding Harte Hanks such other and further relief as this Court deems just and proper.

## COUNT X—AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (against Primus)

131.    Harte Hanks realleges and incorporates paragraphs 1 through 66, 89-96 above as if fully set forth herein.

132.    Castaneda breached his fiduciary duties to Harte Hanks.

HomeR Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

133.    Primus knew that Castaneda was an employee of Harte Hanks and owed fiduciary duties to Harte Hanks.

134.    Primus substantially assisted or encouraged commission of Castaneda's breach of fiduciary duty to Harte Hanks by, *inter alia*, (i) allowing Castaneda to become and remain a member of Primus; (ii) employing Castaneda; (iii) accepting and using Harte Hanks property misappropriated by Castaneda to compete with Harte Hanks; and (iv) paying Castaneda for his services. As a direct and proximate result of Primus's aiding and abetting Castaneda's and Lima's breach of fiduciary duty, Harte Hanks has suffered injury.

WHEREFORE, Harte Hanks demands judgment against Primus for damages, interest, costs, and awarding Harte Hanks such other and further relief as this Court deems just and proper.

## COUNT XI—AIDING AND ABETTING BREACH OF DUTY OF LOYALTY
### (against Primus)

135.    Harte Hanks realleges and incorporates paragraphs 1 through 66, 85-88 above as if fully set forth herein.

136.    Castaneda breached his duty of loyalty to Harte Hanks.

137.    Primus knew that Castaneda was an employee of Harte Hanks and owed a duty of loyalty to Harte Hanks.

138.    Primus substantially assisted or encouraged commission of Castaneda's breach of his duty of loyalty to Harte Hanks by, *inter alia*, (i) allowing Castaneda to become and remain a member of Primus; (ii) employing Castaneda; (iii) accepting and using Harte Hanks property misappropriated by Castaneda to compete with Harte Hanks; and (iv) paying Castaneda for his services.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

139.    As a direct and proximate result of Primus's aiding and abetting the breach of the duty of loyalty, Harte Hanks has suffered injury.

WHEREFORE, Harte Hanks demands judgment against Primus for damages, interest, costs, and awarding Harte Hanks such other and further relief as this Court deems just and proper.

## COUNT XII—CONSTRUCTIVE TRUST
### (against Lima)

136.    Harte Hanks realleges and incorporates paragraphs 1 through 66 above as if fully set forth herein.

137.    Harte Hanks had a confidential relationship with Castaneda, memorialized by the Employment Agreements, that among other things (i) ensured that all software and other property he developed or worked on would be the sole property of Harte Hanks; (ii) prohibited disclosure, sharing, or otherwise using any of the property or information he developed or worked on outside of Harte Hanks; and (iii) required that Castaneda not at any time, during or subsequent to his employment, directly or indirectly divulge to any person or company outside of Harte Hanks any Non-Public Information obtained during the course of performing his duties.

138.    Lima's lucrative technology operations are entirely based on software written, developed, programmed, or otherwise misappropriated by Castaneda while an employee of Harte Hanks.

139.    Lima has thus fraudulently obtained property of Harte Hanks and acquired a business advantage it should not in equity and good conscience retain.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

140.    Lima has wrongfully withheld definitive, designated property of Harte Hanks, including, *inter alia*, logistics software, including software code and applications, one or more websites, client relationships, receivables, and bank accounts.

WHEREFORE, Harte Hanks demands judgment against Lima for a constructive trust over all such designated and similar property that belongs to Harte Hanks.

Date: March 10, 2020.

Respectfully submitted:



Attorneys for Harte Hanks, Inc.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Phone: (305) 350-5192
Fax: (305) 982-0069

By: _/s/ Christopher J. King_
        Kevin P. Jacobs, Esq.
        Email: kjacobs@homerbonner.com
        Florida Bar No: 169821
        Christopher J. King, Esq.
        Email: cking@homerbonner.com
        Florida Bar No: 123919
        Connie F. Chen, Esq.
        Email: cchen@homerbonner.com
        Florida Bar No: 1003852

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on March 10, 2020 a true and correct copy of the foregoing

was electronically filed with the Clerk of Court using CM/ECF and served this day on all

counsel of record via the Court's e-service system.

By*:      /s/ Christopher J. King*
       Christopher J. King

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com